# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **AERO ADVANCED PAINT** | : | |
| **TECHNOLOGY, INC.** | : | |
| 1245 Kinnear Road | : | |
| Columbus, Ohio 43212 | : | CASE NO.:  2:18-cv-00394 |
| | : | |
| Plaintiff, | : | JUDGE |
| | : | |
| vs. | : | MAGISTRATE JUDGE |
| | : | |
| **INTERNATIONAL AERO PRODUCTS,** | : | |
| **LLC** | : | |
| c/o Jonathan M. Saltman | : | |
| 9058 Rosecrans Avenue | : | |
| Bellflower, California 90706 | : | |
| | : | |
| Also Serve: | : | |
| National Registered Agents, Inc. | : | |
| 160 Greentree Drive, Suite 101 | : | |
| Dover, Delaware 19904 | : | |
| | : | |
| and | : | |
| | : | |
| **INTERNATIONAL AERO HOLDINGS,** | : | |
| **LLC** | : | |
| c/o Jonathan M. Saltman | : | |
| 9058 Rosecrans Avenue | : | |
| Bellflower, California 90706 | : | |
| | : | |
| Also Serve: | : | |
| National Registered Agents, Inc. | : | |
| 160 Greentree Drive, Suite 101 | : | |
| Dover, Delaware 19904 | : | |
| | : | |
| and | : | |
| | : | |
| **INTERNATIONAL AERO** | : | |
| **ENGINEERING, LLC** | : | |
| c/o Jonathan M. Saltman | : | |
| 9058 Rosecrans Avenue | : | |
| Bellflower, California 90706 | : | |
| | : | |
| | : | |

1

Also Serve:                                                        :
National Registered Agents, Inc.                                  :
160 Greentree Drive, Suite 101                                    :
Dover, Delaware 19904                                             :
                                                                  :
and                                                               :
                                                                  :
**INTERNATIONAL AERO SERVICES,**                                  :
**LLC**                                                           :
c/o National Registered Agents, Inc.                              :
818 West Seventh Street, Suite 930                                :
Los Angeles, California 90017                                     :
                                                                  :
Also Serve:                                                       :
National Registered Agents, Inc.                                  :
160 Greentree Drive, Suite 101                                    :
Dover, Delaware 19904                                             :
                                                                  :
and                                                               :
                                                                  :
**JONATHAN M. SALTMAN**                                           :
9058 Rosecrans Avenue                                             :
Bellflower, California 90706                                      :
                                                                  :
and                                                               :
                                                                  :
**JOHN DOES 1 – 5**                                               :
                                                                  :
            Defendants.                                           :

---

## COMPLAINT

## (JURY DEMAND ENDORSED HEREON)

---

Plaintiff AERO Advanced Paint Technologies, Inc. ("AERO") alleges as follows:

## PARTIES

1.      Plaintiff AERO is a corporation organized and existing under the laws of the state of Delaware and having a principal place of business located at 1245 Kinnear Road, Columbus, Ohio 43212.  (See **Exhibit 1** hereto.)

2.      Plaintiff AERO was incorporated on December 30, 2015, and is a wholly owned subsidiary of entrotech, inc. ("entrotech"), a corporation organized and existing under the laws of the state of Ohio and having a principal place of business located at 1245 Kinnear Road, Columbus, Ohio 43212.  (See **Exhibit 2** hereto.)

3.      Defendant International Aero Products, LLC ("IAP"), upon information and belief, is a limited liability company organized and existing under the laws of the state of Delaware and having a principal place of business located at 9058 Rosecrans Avenue, Bellflower, California 90706.  (See **Exhibits 3 and 4** hereto.)

4.      Upon information and belief, Defendant IAP was incorporated in Delaware on April 14, 2010, and assigned registration file number 4811813.  (See **Exhibit 4** hereto.)

5.      Upon information and belief, IAP's registered agent for service of process is National Registered Agents, Inc. with an address of 160 Greentree Drive, Suite 101, Dover, Delaware 19904.  (See **Exhibit 4** hereto.)  Alternatively, according to information filed with the California Secretary of State, Jonathan M. Saltman is an agent for service of process, with Mr. Saltman represented to have an address of 9058 Rosecrans Avenue, Bellflower, California 90706.  (See **Exhibit 3** hereto.)

6.      Defendant International Aero Holdings, LLC ("IAH"), upon information and belief, is a limited liability company organized and existing under the laws of the state of Delaware and having a principal place of business located at 9058 Rosecrans Avenue, Bellflower, California 90706.  (See **Exhibits 5 and 6** hereto.)

7.      Upon information and belief, Defendant IAH was incorporated in Delaware on February 9, 2001, and assigned registration file number 3356619.  (See **Exhibit 6** hereto.)

8.     Upon information and belief, IAH's registered agent for service of process is National Registered Agents, Inc. with an address of 160 Greentree Drive, Suite 101, Dover, Delaware 19904.  (See **Exhibit 6** hereto.)  Alternatively, according to information filed with the California Secretary of State, Jonathan M. Saltman is an agent for service of process, with Mr. Saltman represented to have an address of 9058 Rosecrans Avenue, Bellflower, California 90706.  (See **Exhibit 5** hereto.)

9.     Defendant International Aero Engineering, LLC ("IAE"), upon information and belief, is a limited liability company organized and existing under the laws of the state of Delaware and having a principal place of business located at 9058 Rosecrans Avenue, Bellflower, California 90706.  (See **Exhibits 7 and 8** hereto.)

10.     Upon information and belief, Defendant IAE was incorporated in Delaware on March 18, 1998, and assigned registration file number 2873111.  (See **Exhibit 8** hereto.)

11.     Upon information and belief, IAE's registered agent for service of process is National Registered Agents, Inc. with an address of 160 Greentree Drive, Suite 101, Dover, Delaware 19904.  (See **Exhibit 8** hereto.)  Alternatively, according to information filed with the California Secretary of State, Jonathan M. Saltman is an agent for service of process, with Mr. Saltman represented to have an address of 9058 Rosecrans Avenue, Bellflower, California 90706.  (See **Exhibit 7** hereto.)

12.     Defendant International Aero Services, LLC ("IAS"), upon information and belief, is a limited liability company organized and existing under the laws of the state of Delaware and having a principal place of business located at 9058 Rosecrans Avenue, Bellflower, California 90706.  (See **Exhibits 9 and 10** hereto.)

13. Upon information and belief, Defendant IAS was incorporated in Delaware on May 28, 1997, and assigned registration file number 2755710. (See **Exhibit 10** hereto.)

14. Upon information and belief, IAS's registered agent for service of process is National Registered Agents, Inc. with an address of 160 Greentree Drive, Suite 101, Dover, Delaware 19904. (See **Exhibit 10** hereto.) Alternatively, according to information filed with the California Secretary of State, National Registered Agents, Inc. is a registered agent for service of process, with an address of 818 West Seventh Street, Suite 930, Los Angeles, California 90017. (See **Exhibits 9 and 11** hereto.)

15. Defendant Jonathan Saltman ("Saltman"), an individual, upon information and belief is a citizen of the state of California with an address of 9058 Rosecrans Avenue, Bellflower, California 90706. (See **Exhibits 3, 5, and 7** hereto.)

16. Defendant Saltman maintains a LinkedIn® profile in which he identifies himself as "Owner, International Aero." (See **Exhibit 12** hereto.)

17. Defendant DOE 1 is a purported company called "International Aero," which Defendant Saltman claims to own, and which is referenced herein. (See **Exhibit 12** hereto.)

18. Defendant DOE 2 is a purported company called "Aero" referenced herein.

19. Defendant DOE 3 is a purported California limited liability company called "International Aero Products, LLC" referenced herein.

20. Defendant DOE 4 is "International Aero Products, LLP, 9058 Rosecrans Avenue, Bellflower, CA 90706, UNITED STATES, a partnership, composed of Jonathan Saltman, US Citizen under the laws of California" referenced herein.

21. Defendant DOE 5 is a purported company called "International AERO Products" referenced herein.

22.     The true names and capacities, to the extent they legally exist, of the defendants named herein as DOES 1 through 5, inclusive, are unknown to Plaintiff Aero who therefore sues those defendants by such fictitious names.  On information and belief, DOES 1 through 5, inclusive, have damaged Plaintiff Aero in the manner set forth herein.  Plaintiff Aero will amend this Complaint to show the true names and capacities of each of the defendants named herein as DOES 1 through 5, to the extent they legally exist, when so ascertained.

## JURISDICTION AND VENUE

23.     This Court has original subject matter jurisdiction over those claims arising under the laws of the United States pursuant to 15 U.S.C. §§ 1121 and 1125 and 28 U.S.C. §§ 1331 and 1338(a).

24.     This Court has original subject matter jurisdiction over the state unfair competition claims pursuant to 28 U.S.C. § 1338(b), as they are related to and joined with substantial claims arising based on federal trademark infringement.

25.     This Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over the other state claims as those claims are so related to claims over which this Court has original subject matter jurisdiction that those claims relate to the same case or controversy.

26.     This Court has personal jurisdiction over at least Defendant IAP since Defendant IAP is doing business in this judicial district through its interactive website, www.internationalaeroproducts.com, on which infringing activities are viewable and through which Defendant IAP's products are offered for sale and may be purchased and shipped to customers in this judicial district.  (See **Exhibits 13, 14 and 15** hereto.)

27. This Court also has personal jurisdiction over at least Defendant IAP since Defendant IAP's products are offered for sale and may be purchased by customers in this judicial district at Walmart, including through its interactive website, www.walmart.com. (See **Exhibit 16** hereto.)

28. This Court also has personal jurisdiction over at least Defendant DOES 1-3, inclusive, based on the false claims of trademark infringement against and associated demands made of Plaintiff Aero, who has a principal place of business located in this judicial district.

29. This Court further has personal jurisdiction over at least one of Defendants based on false assertions, false designations of origin, and false descriptions under 15 U.S.C. §§ 1114 and 1125(a) as they relate to Plaintiff Aero, who has a principal place of business located in this judicial district, and Plaintiff's goods, services, and commercial activities.

30. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) as this Court has personal jurisdiction over at least Defendant IAP and Defendant DOES 1-4, who have collectively committed acts in violation of federal and state laws within this judicial district and/or knowingly injured and threatened Plaintiff Aero, who is domiciled in this judicial district.

## GENERAL FACTUAL ALLEGATIONS RELATED TO ACTUAL CONTROVERSY

31. Plaintiff Aero's parent company, entrotech, originally developed paint in film form to maintain the integrity of FAA-required markings on commercial airliners. Once the technology proved effective, entrotech decided to rethink paint and the paint business entirely. As a result, Plaintiff Aero was formed as a wholly owned subsidiary of entrotech to focus on a rapidly evolving market in film-based paint.

32. As opposed to conventional spray-applied paint, film-based paint is environmentally responsible, sustainable, lightweight, durable, aerodynamic, and achieves a level of aesthetic quality not seen with spray-applied paint.

33. Plaintiff Aero, on its own and through acts of entrotech that inured to the benefit of Plaintiff Aero upon its formation and assignment of rights and goodwill thereto, has engaged in substantial and continuous marketing and promotion of its film-based paint and associated AERO-based brand, resulting in substantial goodwill associated with its AERO-based marks and recognition of those marks among consumers familiar with Plaintiff Aero's reputation in the burgeoning industry of film-based paint.

**The Aero Registrations and Applications**

34. Plaintiff Aero is the holder of four United States Trademark Registrations based on the word AERO used in conjunction with paint in film form.

35. On April 7, 2015, United States Trademark Registration No. 4,715,104 ("the '104 Registration") was duly and legally issued by the United States Patent and Trademark Office. (See **Exhibit 17** hereto.)

36. Plaintiff Aero currently owns and is the named holder of the '104 Registration. (See **Exhibit 18** hereto.)

37. The mark of the '104 Registration is a stylized design AERO mark as follows:



(See **Exhibit 17** hereto.)

38. The '104 Registration is directed toward goods in International Class 2 identified as "paint in film form." (See **Exhibit 17** hereto.)

39. On May 3, 2016, United States Trademark Registration No. 4,948,895 ("the '895 Registration") was duly and legally issued by the United States Patent and Trademark Office. (See **Exhibit 59** hereto.)

40. Plaintiff Aero currently owns and is a named holder of the '895 Registration. (See **Exhibits 19 and 20** hereto.)

41. The mark of the '895 Registration is a standard character AERO mark. (See **Exhibit 59** hereto.)

42. The '895 Registration is directed toward goods in International Class 2 identified as "paint in film form." (See **Exhibit 59** hereto.)

43. On December 8, 2015, United States Trademark Registration No. 4,867,416 ("the '416 Registration") was duly and legally issued by the United States Patent and Trademark Office. (See **Exhibit 21** hereto.)

44. Plaintiff Aero currently owns and is the named holder of the '416 Registration. (See **Exhibit 22** hereto.)

45. The mark of the '416 Registration is a standard character AERO LIQUID METAL mark. (See **Exhibit 21** hereto.)

46. The '416 Registration is directed toward goods in International Class 2 identified as "paint in film form for industrial and commercial use." (See **Exhibit 21** hereto.)

47. On September 30, 2014, United States Trademark Registration No. 4,614,452 ("the '452 Registration") was duly and legally issued by the United States Patent and Trademark Office. (See **Exhibit 23** hereto.)

48.     Plaintiff Aero currently owns and is the named holder of the '452 Registration. (See **Exhibit 24** hereto.)

49.     The mark of the '452 Registration is a stylized design AERO ADVANCED PAINT TECHNOLOGY mark as follows:



(See **Exhibit 23** hereto.)

50.     The '452 Registration is directed toward goods in International Class 2 identified as "paint in film form."  (See **Exhibit 23** hereto.)

51.     On August 9, 2017, United States Trademark Application No. 87/562,858 ("the '858 Application") was filed by Plaintiff Aero with the United States Patent and Trademark Office.  (See **Exhibit 25** hereto.)

52.     The mark of the '858 Application is a standard character AERO SUSTAINABLE PAINT TECHNOLOGY mark.  (See **Exhibit 25** hereto.)

53.     The '858 Application is directed toward goods in International Class 2 identified as "paint in film form."  (See **Exhibit 25** hereto.)

54.     The '858 Application published for opposition on March 27, 2018, and on April 11, 2018, two seemingly identical requests for extension of time to oppose until July 25, 2018, were filed and granted against the '858 Application by a party identified as "International Aero Products, LLP, 9058 Rosecrans Avenue, Bellflower, CA 90706, UNITED STATES, a partnership, composed of Jonathan Saltman, US Citizen under the laws of California"

(Defendant DOE 4) with the assertion that good cause for the request was shown as the "potential opposer is engaged in settlement discussions with applicant." (See **Exhibits 26, 27, 28, and 29** hereto.)

55.    On August 31, 2017, United States Trademark Application No. 87/592,014 ("the '014 Application") was filed by Plaintiff Aero with the United States Patent and Trademark Office. (See **Exhibit 30** hereto.)

56.    The mark of the '014 Application is a stylized design AERO SUSTAINABLE PAINT TECHNOLOGY mark as follows:



(See **Exhibit 30** hereto.)

57.    The '014 Application is directed toward goods in International Class 2 identified as "paint in film form." (See **Exhibit 30** hereto.)

58.    The '014 Application published for opposition on March 20, 2018, and on April 11, 2018, a request for extension of time to oppose until July 18, 2018, was filed and granted against the '014 Application by a party identified as "International Aero Products, LLP, 9058 Rosecrans Avenue, Bellflower, CA 90706, UNITED STATES, a partnership, composed of Jonathan Saltman, US Citizen under the laws of California" (Defendant DOE 4) with the assertion that good cause for the request was shown as the "potential opposer is engaged in settlement discussions with applicant." (See **Exhibits 31 and 32** hereto.)

**The "International Aero" Registrations, Applications, Assertions, and Parties**

59.    United States Trademark Registration 4,256,779 ("the '779 Registration") was registered on December 11, 2012. (See **Exhibit 33** hereto.)

11

60. The '779 Registration is for goods in International Class 3 described as "Automotive cleaning preparations" and a stylized design A A E R O mark as follows:



(See **Exhibits 33 and 34** hereto.)

61. The application for the '779 Registration was filed in the name of International Aero Products, LLC, an alleged California limited liability company (Defendant DOE 3 herein), with a verified statement that February 1, 2010, was the date of first use in commerce and May 1, 2010, was the date of first use in commerce regulated by the United States of the mark therein. (See **Exhibit 33** hereto.)

62. Based on information and belief, International Aero Products, LLC, did not legally exist as of February 1, 2010, nor has it ever since legally existed as a limited liability company organized under the laws of the state of California. (See **Exhibit 36** hereto.)

63. In fact, based on information and belief, no business entity having the name "International Aero Products" was organized and legally existed under the laws of *any* state on February 1, 2010.

64. On April 14, 2010, a still legally existing limited liability company having the name, International Aero Products, LLC, was organized under the laws of the state of Delaware ("Defendant IAP" herein). (See **Exhibit 4** hereto.)

65. Recently, Defendant IAP filed United States Trademark Application Number 87/276,886 ("the '886 Application") on December 21, 2016, with the United States Patent and

Trademark Office for registration of the following stylized design mark for use in conjunction with goods in International Class 3 described as "Automotive cleaning preparations":



(See **Exhibit 37** hereto.)

66.     The '779 Registration was identified as a "related property" of the '886 Application, with Defendant IAP claiming ownership of the '779 Registration.  (See **Exhibit 37** hereto.)

67.     The '886 Application was abandoned on September 29, 2017, as Defendant IAP failed to respond to an office action therein.  (See **Exhibit 38** hereto.)

68.     Despite Defendant IAP's filing of the '886 Application in the name of International Aero Products, LLC, a limited liability company legally organized under the laws of *Delaware* less than one year prior, on December 11, 2017, a Combined Declaration of Use and Incontestability under Sections 8 & 15 was filed with the United States Patent and Trademark Office on behalf of International Aero Products, LLC, a limited liability company legally organized under the laws of *California*, (Defendant DOE 3) for the '779 Registration. (See **Exhibits 34 and 37** hereto.)  The Combined Declaration was accepted by the United States Patent and Trademark Office on January 6, 2018.  (See **Exhibit 35** hereto.)

69.     On April 11, 2018, a Complaint for: (1) Infringement of a Federally Registered Trademark Under 15 U.S.C. Section 1114; and (2) Infringement of Trademark Under 15 U.S.C. Section 1125(a) was filed in the United States District Court for the Central District of California

and assigned Case No. 2:18-cv-03047 ("the California Complaint"). (See **Exhibits 39 and 40** hereto.) The California Complaint has not yet been served, and Plaintiff Aero denies the infringement allegations therein.

70. Despite correctly asserting that Plaintiff Aero is a Delaware corporation, the California Complaint incorrectly identified Plaintiff Aero as "having a principal place of business at 409 Illinois Street, San Francisco, California 94158." (See Paragraph 1, *supra*, and **Exhibits 39 and 40** hereto.)

71. Based on information and belief, the California Complaint was also filed in the name of a non-existent legal entity, such that it is without the capacity to sue, as "INTERNATIONAL AERO PRODUCTS LLC, a California limited liability company" with a "principal place of business at 9058 Rosecrans Avenue, Bellflower, California 90706" (Defendant DOE 3) was identified as the Plaintiff in the California Complaint. (See Paragraph 62, *supra*, and **Exhibits 39 and 40** hereto.)

72. The '779 Registration was cited in the California Complaint as a basis for trademark infringement claims therein. (See **Exhibit 39** hereto.)

73. Also, on April 11, 2018, a cease-and-desist letter was sent by counsel of behalf of "International Aero ("Aero")" (Defendants DOE 1-2) demanding that Plaintiff Aero immediately:

> (1) cease using in commerce any trademark containing the term AERO, or any colorable imitation thereof, or otherwise committing any further infringement of [International Aero's] AERO trademarks;

> (2) expressly cancel U.S. Trademark Registration Nos. 4,715,104; 4,614,452; 4,948,895; and 4,867,416; … [and]

> * * *

(4) deliver to [International Aero] all product packaging, marketing material, advertisements, paper and digital materials in [Plaintiff's] inventory, possession, custody, or control, or *en route* to the U.S. from any overseas source that displays any of the Accused Trademarks, or a certified videotape showing the destruction of the same.

(See **Exhibit 41** hereto, referred to hereinafter as the "International Aero Demand Letter.")

74.     The filing of the California Complaint and transmission of the International Aero Demand Letter followed several e-mail and telephonic communications between counsel for Plaintiff Aero and counsel purportedly acting on behalf of Defendant IAP.

75.     On October 27, 2017, a letter putting Defendant IAP and its President/CEO, Jonathan Saltman (Defendant Saltman), on notice of the Aero Registrations was addressed and sent to Jonathan M. Saltman, President/CEO of International Aero Products, LLC at 9058 Rosecrans Avenue, Bellflower, California 90706-2038, JonathanS@InternationalAero.com. (See **Exhibit 42** hereto.)

76.     Counsel for International Aero Products, LLC acknowledged receipt of Plaintiff Aero's October 27 letter.  (See **Exhibit 43** hereto.)

77.     Several other entities apparently related to Defendant IAP also exist.

78.     Defendant IAP's website, www.internationalaeroproducts.com, includes a webpage entitled "Other Aero Companies" identifying Defendant IAE and Defendant IAS.  (See **Exhibit 44** hereto.)

79.     Based on information and belief, the founding date of Defendant IAS on the "Other Aero Companies" webpage is incorrect, however, as that date does not reconcile with records of the California Secretary of State and the State of Delaware – Department of State: Division of Corporations.  (See Paragraph 13, *supra*, and **Exhibits 10 and 44** hereto.)

80.     A GOOGLE® photograph of the building located at 9058 Rosecrans Avenue, Bellflower, California 90706 illustrates the name "International Aero Engineering – An

15

International Aero Company" (the latter of which is identified herein as Defendant DOE 1) on the outside thereof.  (See **Exhibit 45** hereto.)

81.     In addition to Defendant IAP, Defendant IAS, and Defendant IAE, a search of business records at the California Secretary of State revealed only one other entity with the phrase "international aero" in its name and appearing to be associated with 9058 Rosecrans Avenue, Bellflower, California 90706 and/or Jonathan Saltman – *i.e.*, Defendant IAH.  (See **Exhibit 36** hereto.)

82.     A search of Fictitious Business Names recorded with the Los Angeles County Registrar-Recorder/County Clerk revealed no names including the phrase "International Aero" (demonstrative with respect to Defendant DOE 1.)   (See **Exhibit 46** hereto.)

83.     A search of Fictitious Business Names recorded with the Los Angeles County Registrar-Recorder/County Clerk also revealed no recorded "Aero" fictitious business names (demonstrative with respect to Defendant DOE 2).  (See **Exhibits 47, 48 and 49** hereto.)

84.     Given the many assertions with respect to "International Aero" parties associated with this controversy, the use on Defendant IAP's website of the term "Aero" to describe the company associated with statements and products described therein, and without further information concerning the relationship amongst them and their respective rights and actions, each of the Defendants is hereby named in this lawsuit.

## FIRST CAUSE OF ACTION
### (Trademark Infringement– 15 U.S.C. §§ 1111 and 1114)

85.     Plaintiff Aero hereby repeats and realleges the allegations set forth above as though fully set forth herein.

86.     At least Defendant IAP and Defendant Saltman were given actual notice of the '104 Registration, the '895 Registration, the '416 Registration, and the '452 Registration (collectively, "the Aero Registrations") as early as October 27, 2017.  (See **Exhibit 42** hereto.)

87.     Each of the Aero Registrations consists solely of or begins with the word AERO.

88.     Each of the Aero Registrations is for goods in International Class 2 described as paint in film form.

89.     The goods of the Aero Registrations are often used in the transportation industry, where they are affixed to transportation vehicles including automobiles, aircraft, boats, and even bobsleds.

90.     The California Complaint acknowledges Plaintiff Aero's use of the marks of the Aero Registrations on automobiles.  (See Paragraphs 23, 27, and 38 of **Exhibit 39** hereto.)

91.     Plaintiff Aero and, prior to incorporation of Plaintiff, entrotech, have used the marks of the Aero Registrations on a continuous and exclusive basis since as early as 2012.

92.     The standard character AERO mark of the '895 Registration has been continuously and exclusively used in conjunction with paint in film form in commerce regulated by the United States since at least as early as May 15, 2013.  (See **Exhibit 59** hereto.)

93.     At least one of the Defendants has used in commerce a reproduction or colorable imitation of at least one of the Aero Registrations in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive consumers in violation of 15 U.S.C. § 1114.

94.     For example, the mark of the '779 Registration has recently been used in commerce in conjunction not only with automotive cleaning preparations described in the '779 Registration, but also in conjunction with automobiles themselves.

95.     Specifically,                Defendant                IAP's                website, www.internationalaeroproducts.com/news/, prominently displays a link to an article entitled "INTERNATIONAL AERO PRODUCTS UNVEILS THE AERO EDITION C7 CORVETTE." (See **Exhibit 50** hereto, referenced hereinafter as the "C7 Corvette Article.")  The C7 Corvette Article was published on October 23, 2014, and includes the following phrases:

- "International AERO Products, AERO, is proud to announce the unveiling of the AERO Edition C7 Corvette created by ABBES Design and builty by MRT Engineered Performance at the 2014 SEMA Show in Las Vegas, Nevada."

- "The AERO Edition C7 Corvette body kit . . . enhances the original design and esthetic of the vehicle giving it a luxurious, global charm.  The vehicle also showcases racing suspension and brake upgrades.  AERO's brand ambassador, Jo Coddington, consulted in the designing of the wheels. [*sic*] which showcase the AERO logo."

- "AERO will continue to customize the vehilce [*sic*] at their upholstery facility in Bellflower, California"

- "AERO's President and CEO, Jonathan Saltman"

- "Before the AERO Edition C7 Corvette leaves AERO Headquarters, the exterior will be protected from the elements with AERO SHIELD, 2-Part Paint Protectant.  The silicone-free, co-polymer protectant will leave the vehicle's paint with a luscious shine and leave the vehicle's paint protected for up to two years."

- "The AERO Edition C7 Corvette is a Limited Edition vehicle"

- "To find out more information about the AERO Edition C7 Corvette, visit the International AERO Products booth at the SEMA Show"

- "Show goers should also stay connected with AERO on Facebook and Twitter"

- "AERO's full line of products have been hitting store shelves all around the world"

(See **Exhibit 51** hereto.)

96.     As another example, the sole word AERO has been used in commerce by at least one of the Defendants to refer to application to and/or coverage of transportation vehicles.

97.     Specifically, a specimen recently filed in conjunction with the '779 Registration illustrates use of the sole word AERO in describing products in a manner creating a likelihood of confusion with the Aero Registrations – *i.e.*, the specimen includes the following language: "while it lays down AERO's exclusive co-polymer to protect and beautify your car's finish for months."  (See **Exhibit 34** hereto.)

98.     Further, the 2017 SEMA show exhibitor list includes a listing for "AERO Detail Products" as an exhibitor, with the following statements: "AERO Detail Products are premium materials manufactured by International AERO Products, LLC for the Automotive Aftermarket" and "AERO covers the late model performance, hot rod, restoration, collector, truck, motorcycle, DIY, exotic, sport compact and aviation markets."   The description also refers to "Collision, Paint, Body & Finishing Supplies" as a Product Category associated with the "AERO Detail Products" exhibitor.  (See **Exhibit 52** hereto.)

99.     As another example, Defendant IAP's website now includes the following homepage banner:  "AERO:  Developed for the fastest, most exotic vehicles on earth – now available for your car."  (See **Exhibit 53** hereto.)

100. The uses described in Paragraphs 93-99, *supra*, are without the license or permission of Plaintiff Aero.

101. The goods with which the uses described in Paragraphs 93-99, *supra*, occurred are at least related to – and even purport to overlap with – those of the Aero Registrations such that consumers are likely to be confused as to the origin or source of such goods.

102. Consumers are likely to be confused in believing that goods associated with uses described in Paragraphs 93-99, *supra*, originate with or come from Plaintiff Aero, are authorized, licensed, endorsed, sponsored by, or are connected in some way with Plaintiff or the marks of the Aero Registrations.

103. Each of the uses described in Paragraphs 93-99, *supra*, is confusingly similar to the marks of the Aero Registrations in at least one of sight, sound, meaning, and commercial impression.

104. In response to Plaintiff Aero's actual notice of the Aero Registrations to Defendant IAP and Defendant Saltman, the International Aero Demand Letter alleges that "International Aero ("Aero") . . . is the senior user of the AERO trademark . . . and Aero's AERO trademark is incontestable at this point." (See **Exhibit 41** hereto.) Based on information and belief, those allegations in the International Aero Demand Letter are false.

105. Based on information and belief, with respect to any of the Defendants, Plaintiff Aero is the senior user of any trademark consisting of the sole word AERO.

106. Exhibit 7 to the California Complaint purports to support the assertion therein that "Aero has used AERO as its trademark since at least February 1, 2010." (See Paragraph 14 and Exhibit 7 within **Exhibit 39** hereto.) Upon information and belief, that assertion is believed to be false.

107.    The California Complaint introduces no evidence to support that assertion. Rather, Exhibit 7 to the California Complaint is asserted to be "a true and correct copy of Aero's website, which was captured and archived in February 2011 by Archive.com."  (See Paragraph 14 and Exhibit 7 within **Exhibit 39** hereto.)  Notably, February 2011 is one year later than the asserted date of first use of February 1, 2010.

108.    In addition, the source of any trademark, to the extent it exists, shown on that webpage is unknown.  The company name and address – *i.e.*, International Aero Products, LLC, 9058 Rosecrans Ave., Bellflower, CA  90706 – provided at the bottom of the webpage illustrated in Exhibit 7 to the California Complaint purports to be that of Defendant IAP or Defendant DOE 3.  (See Paragraph 14 and Exhibit 7 within **Exhibit 39** hereto.)  Defendant IAP was not formed, however, until April 14, 2010.  (See Paragraph 4, *supra*, and **Exhibit 4** hereto.)  In addition, that illustrated webpage prominently states: "Our Website is Coming Soon!  Visit us again!"  (See **Exhibit 39** hereto.)  Thereunder, the illustrated webpage states: "We welcome you to visit our other fine Aero Companies: International Aero Services, International Aero Engineering."  (*Id*.)

109.    Further to Paragraph 108, *supra*, the stylized design A A E R O mark of the '779 Registration appears to be prominently displayed on the illustrated webpage, but with the phrase "An International Aero Company" immediately thereunder and seemingly included within the mark.  (See Paragraph 14 and Exhibit 7 within **Exhibit 39** hereto.)

110.    Other than inclusion in the stylized design A A E R O mark similar in appearance to that of the '779 Registration, all but two occurrences of the word AERO on that webpage are in association with other words in reference to a company – *i.e.*, "An International Aero Company," "Aero Companies," "International Aero Products, LLC," "International Aero Services," and "International Aero Engineering."   The other two occurrences of the word AERO

21

on that webpage are in the general phrase "AERO products."  (See Exhibit 7 within **Exhibit 39** hereto.)

111.    Defendant DOE 3 alleges in the California Complaint that it "has regularly exhibited and promoted its AERO branded automotive cleaning products at numerous automotive tradeshows, such as the Specialty Equipment Marketing Association ("SEMA") tradeshow in Las Vegas, Nevada."  (See Paragraph 16 and Exhibit 9 within **Exhibit 39** hereto.)  In doing so, Defendant DOE 3 referenced an April 7, 2017, article including the following phrases: "AERO booth," "AERO Crew," "AERO fans," "AERO's full line of premium detailing products are now all around the world," and "International AERO Products are designed" (*Id.*)  Also included in that article are references to "Facebook at http://www.facebook.com/internationalaero International Aero Products (IAP) or http://www.facebook.com/aerodetailproducts Aero Premium Detailing Products." (*Id.*)  Those Facebook pages refer to Defendant IAP's website, www.internationalaeroproducts.com.  (See **Exhibits 54 and 55** hereto.)

112.    In view of the foregoing allegations set forth in Paragraphs 107-111, the California Complaint does not evidence that any of the Defendants has used the sole word AERO as a trademark as early as February 1, 2010, nor earlier than the dates of first use of any of the marks of the Aero Registrations.

113.    The California Complaint also does not evidence that any of the Defendants has used any mark beginning with the word AERO as a trademark as early as February 1, 2010, nor earlier than the dates of first use of any of the marks of the Aero Registrations.  Recall that the stylized design A A E R O mark of the '779 Registration does not fall within this category.  (See **Exhibit 34** hereto.)

114.    The uses described in Paragraphs 93-95 have already caused consumer confusion and are likely to further damage Plaintiff unless enjoined.

115.    As early as November 2016, an attendee at the annual Las Vegas SEMA show familiar with Plaintiff Aero contacted Plaintiff to inquire as to the nature of connection with Plaintiff of automobiles exhibited at the show with the mark of the '779 Registration prominently displayed on the exterior surface thereof.    The attendee took photographs of automobiles showing the mark of the '779 Registration affixed thereto.  (See **Exhibits 57 and 58** hereto.)

116.    Again, with respect to the SEMA show, in October 2017, Plaintiff Aero was contacted by an attendee who was confused into thinking that Plaintiff Aero would be exhibiting products bearing its AERO-based marks at the 2017 SEMA show based on inclusion of "AERO Detail Products" in the published exhibitor list for 2017 SEMA.  In conjunction with listing of "AERO Detail Products" as an exhibitor was the following description:  "AERO Detail Products are premium materials manufactured by International AERO Products, LLC for the Automotive Aftermarket."  Further stated therein:  "AERO covers the late model performance, hot rod, restoration, collector, truck, motorcycle, DIY, exotic, sport compact and aviation markets. AERO's complete product line are [*sic*] innovative professional grade products . . . . International AERO Products sets the standards others follow with tested, approved and eco-friendly premium detailing products, making AERO the Industry Powerhouse."  (See **Exhibit 52** hereto.)

117.    Based on the foregoing, Plaintiff Aero requests that this Court enter a judgment that the Defendants have collectively or otherwise, as determined in accordance with the relationship amongst them and their respective rights and actions, infringed at least one of the Aero Registrations.

118.    As at least one of the Defendants had actual notice of the Aero Registrations as early as October 27, 2017, continued infringement of the Aero Registrations is knowing, willful, and deliberate.  Thus, Plaintiff Aero requests that this Court award Plaintiff damages pursuant to 15 U.S.C. §§ 1111 and 1117 and other applicable statutes in an amount sufficient to compensate Plaintiff for Defendants' infringement of the Aero Registrations including Defendants' profits and damages sustained by Plaintiff, together with pre-judgment and post-judgment interest and costs.

119.    Plaintiff Aero also requests that this Court issue an injunction pursuant to 15 U.S.C. § 1116 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the Aero Registrations.

120.    Plaintiff Aero also requests that this Court issue an injunction pursuant to 15 U.S.C. § 1116 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from using the single word AERO as a trademark, from attempting to register any trademarks consisting of the single word AERO, and from using the mark of the '779 Registration on transportation vehicles.

121.    Plaintiff Aero also requests that this Court issue an order pursuant to 15 U.S.C. § 1118 that all goods, labels, signs, prints, packages, wrappers, receptacles, advertisements, and the like in the possession of any of the Defendants and containing the sole word AERO used to refer to a business entity be delivered up and destroyed.

122.    Plaintiff Aero further requests that this Court issue an order pursuant to 15 U.S.C. § 1118 that all goods, labels, signs, prints, packages, wrappers, receptacles, advertisements, and

the like in the possession of any of the Defendants and referring to a business entity containing at least the word AERO that is not a legally existing business entity or registered fictitious business name be delivered up and destroyed.

## SECOND CAUSE OF ACTION
### (False Designation of Origin and False Descriptions – 15 U.S.C. § 1125)

123.     Plaintiff Aero hereby repeats and realleges the allegations set forth above as though fully set forth herein.

124.     Based on information and belief, at least one of the Defendants uses in commerce the word AERO in connection with goods or services or containers for such goods in a manner likely to cause confusion or mistake or to deceive consumers with respect to a false origin, sponsorship, approval, affiliation, connection, or association of the Defendant with or by Plaintiff and/or one or more of Plaintiff's goods, services, or commercial activities.

125.     Based on information and belief, at least one of the Defendants uses in commerce the word AERO in conjunction with a false or misleading description or representation of fact so as to likely cause confusion or mistake or to deceive consumers with respect to a false origin, sponsorship, approval, affiliation, connection, or association of the Defendant with or by Plaintiff and/or one or more of Plaintiff's goods, services, or commercial activities.

126.     Based on information and belief, at least one of the Defendants, through use in commerce of the word AERO, misrepresents the nature, characteristics, or qualities of Defendant's and/or Plaintiff's goods, services, or commercial activities.

127.     Based on the foregoing, Plaintiff Aero requests that this Court enter a judgment that the Defendants have collectively or otherwise, as determined in accordance with the relationship amongst them and their respective rights and actions, used the word AERO in a

manner likely to cause confusion or mistake or to deceive consumers as set forth in 15 U.S.C. § 1125;

128.    As at least one of the Defendants had actual notice of the Aero Registrations as early as October 27, 2017, that continued use of the word AERO in a manner likely to cause confusion or mistake or to deceive consumers was knowing, willful, and deliberate.  Thus, Plaintiff Aero requests that this Court award Plaintiff damages pursuant to 15 U.S.C. § 1117 and other applicable statutes in an amount sufficient to justly compensate Plaintiff for Defendants' use of the word AERO in that manner, including Defendants' profits and damages sustained by Plaintiff, together with pre-judgment and post-judgment interest and costs.

129.    Plaintiff Aero also requests that this Court issue an injunction pursuant to 15 U.S.C. § 1116 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from using the word AERO in a manner likely to cause confusion or mistake or to deceive consumers as set forth in 15 U.S.C. § 1125.

130.    Plaintiff Aero also requests that this Court issue an injunction pursuant to 15 U.S.C. § 1116 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from using the single word AERO as a trademark, from attempting to register any trademarks consisting of the single word AERO, and from using the mark of the '779 Registration on transportation vehicles.

131.    Plaintiff Aero also requests that this Court issue an order pursuant to 15 U.S.C. § 1118 that all goods, labels, signs, prints, packages, wrappers, receptacles, advertisements, and

the like in the possession of any of the Defendants and containing the sole word AERO used to refer to a business entity be delivered up and destroyed.

132.    Plaintiff Aero further requests that this Court issue an order pursuant to 15 U.S.C. § 1118 that all goods, labels, signs, prints, packages, wrappers, receptacles, advertisements, and the like in the possession of any of the Defendants and referring to a business entity containing at least the word AERO that is not a legally existing business entity or registered fictitious business name be delivered up and destroyed.

**THIRD CAUSE OF ACTION**
**(Non-Infringement, Unenforceability, and Cancellation of the '779 Registration –**
**28 U.S.C. §§ 2201 and 2202 and 15 U.S.C. §§ 1051, 1064, and 1125)**

133.    Plaintiff Aero hereby repeats and realleges the allegations set forth above as though fully set forth herein.

134.    An actual justiciable controversy exists by way of the credible threat of immediate litigation (with a lawsuit having already been filed against Plaintiff – although in the name of a non-existent entity without the capacity to sue – Defendant DOE 3).  (See **Exhibits 39 and 40** hereto.)

135.    Defendant DOE 4 has also threatened to oppose registration of the '858 Application and the '014 Application, both owned by Plaintiff Aero, as set forth in Paragraphs 54 and 58, *supra*.

136.    In view of foregoing, Plaintiff seeks relief from this Court by way of a judgment declaring that Plaintiff does not infringe any of the referenced trademarks or violate the Lanham Act as set forth in the California Complaint.

137. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff Aero is entitled to a declaratory judgment that it, its officers, its agents, and its employees are not infringing, have not infringed, and are not liable for infringing any trademark rights of the Defendants.

138. Plaintiff Aero requests that this Court enter a judgment declaring that Plaintiff and its officers, agents, and employees have not infringed any federal or common law trademark rights of the Defendants, where such rights are for marks containing the word AERO.

139. Plaintiff Aero also requests that this Court issue an injunction pursuant to 15 U.S.C. § 1116 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from relying on or referencing the '779 Registration in opposing registration of the Aero Applications.

140. Plaintiff Aero further requests that this Court enter a judgment declaring that Plaintiff and its officers, agents, and employees have not infringed the '779 Registration, to the extent it is enforceable or valid, which Plaintiff believes it is not.

141. Plaintiff, being the named defendant in the California Complaint, is or will be damaged by continued registration of the '779 Registration.

142. Based on information and belief, Plaintiff believes that the '779 Registration may have been obtained fraudulently, given that the application was filed for the '779 Registration with a verified statement that February 1, 2010, was the date of first use in commerce and May 1, 2010, was the date of first use in commerce regulated by the United States of the mark of the '779 Registration. (See Paragraphs 59-64, *supra*.) Plaintiff Aero, therefore, requests that this Court award Plaintiff damages against Defendants jointly and severally pursuant to 15 U.S.C. § 1120 based on the false or fraudulent procurement of the '779 Registration.

143. Given that the holder of the '779 Registration did not and still does not legally exist, the mark of the '779 Registration is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used. Per mandates of 37 C.F.R. § 2.71(d), the '779 Registration cannot be corrected to substitute another entity as the owner.

144. The '779 Registration is, therefore, unenforceable and subject to cancellation under 15 U.S.C. § 1064, subsection 3. In addition, as it lacks the requisite legal requirements to be protectable on the Principal Register and to be enforceable, Plaintiff seeks relief from this Court by way of an order pursuant to 15 U.S.C. § 1119 and other applicable statutes cancelling the '779 Registration held in the name of International Aero Products, LLC, an alleged California limited liability company.

**FOURTH CAUSE OF ACTION**
**(Unfair Competition and Deceptive Trade Practices – Ohio R.C. §4165)**

145. Plaintiff Aero hereby repeats and realleges the allegations set forth above as though fully set forth herein.

146. Based on information and belief, at least one of the Defendants uses in commerce the word AERO in connection with goods or services or containers for such goods in a manner likely to cause confusion or misunderstanding among consumers as to the source, sponsorship, approval, approval, or certification of goods of the Defendants with or by Plaintiff and/or one or more of Plaintiff's goods, services, or commercial activities.

147. Based on information and belief, at least one of the Defendants uses in commerce the word AERO in connection with goods or services or containers for such goods in a manner likely to cause confusion or misunderstanding among consumers as to affiliation, connection, or

association, or certification by, another of goods of the Defendants with or by Plaintiff and/or one or more of Plaintiff's goods, services, or commercial activities.

148.    Based on information and belief, at least one of the Defendants, through use in commerce of the word AERO, misrepresents the nature, characteristics, or qualities of Defendant's and/or Plaintiff's goods, services, or commercial activities.

149.    Based on the foregoing, Plaintiff Aero requests that this Court enter a judgment that the Defendants have collectively or otherwise, as determined in accordance with the relationship amongst them and their respective rights and actions, used the word AERO in a manner likely to cause confusion or mistake or to deceive consumers in violation of Ohio R.C. § 4165.

150.    As at least one of the Defendants had actual notice of the Aero Registrations as early as October 27, 2017, that continued use of the word AERO in a manner likely to cause confusion or mistake or to deceive consumers was knowing, willful, and deliberate.  Thus, Plaintiff Aero requests that this Court award Plaintiff damages in an amount sufficient to justly compensate Plaintiff for Defendants' use of the word AERO in that manner, including Defendants' profits and damages sustained by Plaintiff, together with pre-judgment and post-judgment interest and costs.

151.    Plaintiff Aero also requests that this Court issue an injunction pursuant to Ohio R.C. §4165.03 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from engaging in deceptive trade practices.

152. Plaintiff Aero further requests that this Court, pursuant to Ohio R.C. §4165.03 award, Plaintiff Aero against Defendants jointly and severally its actual damages, attorney's fees, and any other remedy available at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

(a)     Enter a judgment that Defendants have collectively or otherwise, as determined in accordance with the relationship amongst them and their respective rights and actions, infringed at least one of the Aero Registrations;

(b)     Award Plaintiff Aero damages against Defendants jointly and severally pursuant to 15 U.S.C. §§ 1111 and 1117 and other applicable statutes in an amount sufficient to justly compensate Plaintiff for Defendants' infringement of the Aero Registrations including Defendants' profits and damages sustained by Plaintiff, together with pre-judgment and post-judgment interest and costs;

(c)     Issue an injunction pursuant to 15 U.S.C. § 1116 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the Aero Registrations;

(d)     Enter a judgment declaring that Plaintiff and its officers, agents, and employees have not infringed any federal or common law trademark rights of the Defendants, where such rights are for marks containing the word AERO;

(e)     Enter a judgment declaring that Plaintiff and its officers, agents, and employees have not infringed the '779 Registration, to the extent it is enforceable or valid;

(f)     Issue an injunction pursuant to 15 U.S.C. § 1116 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from using the single word AERO as a trademark, from attempting to register any trademarks consisting of the single word AERO, and from using the mark of the '779 Registration on transportation vehicles;

(g)     Issue an injunction pursuant to 15 U.S.C. § 1116 permanently enjoining each of the Defendants and their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from opposing registration of the Aero Applications;

(h)     Issue an order pursuant to 15 U.S.C. § 1119 and other applicable statutes holding the '779 Registration unenforceable and cancelling the '779 Registration held in the name of International Aero Products, LLC, an alleged California limited liability company;

(i)     Award Plaintiff Aero damages against Defendants jointly and severally pursuant to 15 U.S.C. § 1120 based on the false or fraudulent procurement of the '779 Registration;

(j)     Issue an order pursuant to 15 U.S.C. § 1118 that all goods, labels, signs, prints, packages, wrappers, receptacles, advertisements, and the like in the possession of any of the Defendants and containing the sole word AERO used to refer to a business entity be delivered up and destroyed;

(k)     Issue an order pursuant to 15 U.S.C. § 1118 that all goods, labels, signs, prints, packages, wrappers, receptacles, advertisements, and the like in the possession of

any of the Defendants and referring to a business entity containing at least the word AERO that is not a legally existing business entity or registered fictitious business name be delivered up and destroyed;

(l)     Award Plaintiff Aero damages against Defendants jointly and severally pursuant to Ohio R.C. §4165 based on the Defendants Deceptive Trade Practices;

(m)    Award Plaintiff reasonable attorney fees pursuant to 15 U.S.C. § 1117, Ohio R.C. §4165.03, and any other applicable statutes jointly and severally against the Defendants; and

(n)     Grant such further relief as may be just and proper.

Respectfully submitted,

CARLILE PATCHEN & MURPHY LLP


/s/ Matthew S. Brown
Matthew S. Brown (0077687)
mbrown@cpmlaw.com
366 East Broad Street
Columbus, Ohio  43215
Tele:   (614) 228-6135
Fax:    (614) 221-0216
*Attorneys for Plaintiff Aero Advanced Paint Technology, Inc.*

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues appropriately triable by jury.

 /s/ Matthew S. Brown
Matthew S. Brown (0077687)